**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 24, 2026

**BY ECF**

The Honorable Jennifer L. Rochon
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**    *United States v. Jay Lucas*, **25 Cr. 581 (JLR)**

Dear Judge Rochon:

      On July 24, 2026, defendant Jay Lucas entered a guilty plea before Magistrate Judge Robyn F. Tarnofsky, pursuant to Your Honor's referral. At the conclusion of the proceeding, Judge Tarnofsky recommended that this Court accept the plea and set a sentencing control date of November 12, 2026.

      The Government respectfully requests that the Court accept the defendant's guilty plea and set a formal sentencing date. Attached for the Court's review are the transcript of the defendant's change-of-plea proceeding (Ex. A), the *Pimentel* letter (Ex. B), and a proposed order accepting the guilty plea (Ex. C).[1]

                       Respectfully submitted,

                       JAY CLAYTON
                       Acting United States Attorney

by: _____
                       David J. Robles
                       Assistant United States Attorney
                       (212) 637-2550

cc:    Cesar de Castro Esq.

---

[1] This application constitutes a request for consideration of a "proposed plea agreement" that tolls Speedy Trial Act time, *see* 18 U.S.C. § 3161(h)(1)(G); *see also* 18 U.S.C. § 3161(h)(1)(D), (H) (time attributable to motions and court consideration thereof is excluded). If the Court disagrees and believes an interests-of-justice exclusion under Section 3161(h)(7) is warranted, the Government respectfully requests that the Court enter such an order.

# EXHIBIT A

Q7OALucP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                25 Cr. 581 (JLR)

JAY LUCAS,

                                  Plea
          Defendant.

------------------------------x

                                  New York, N.Y.
                                  July 24, 2026
                                  11:12 a.m.


Before:

                HON. ROBYN F. TARNOFSKY,

                                  U.S. Magistrate Judge

                       APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  DAVID ROBLES
     Assistant United States Attorney

THE LAW FIRM OF CESAR DE CASTRO, P.C.
     Attorneys for Defendant
BY:  CESAR DE CASTRO


Also Present:

Zachary Williams, FBI Special Agent

Q7OALucP

(Case called)

THE DEPUTY CLERK:  Please state your name for the record, starting with the government.

MR. ROBLES:  Good morning, your Honor.

David Robles for the government.  I'm joined at counsel table by FBI Special Agent Zachary Williams.

THE COURT:  Good morning.

MR. DE CASTRO:  Good morning, your Honor.

Caesar De Castro for Mr. Lucas who is standing to my right.

THE DEFENDANT:  Yes.

THE COURT:  Good morning.  Thank you for being here. I appreciate it.

My name is Magistrate Judge Tarnofsky, and I understand we're here for a change of plea.  Is that correct?

MR. DE CASTRO:  That's correct, your Honor.

THE COURT:  There was previously an arraignment, yes?

MR. DE CASTRO:  Yes, your Honor.

THE COURT:  Mr. Lucas, I have in front of me a Consent to Proceed Before a United States Magistrate Judge on a Felony Plea Allocution that you have signed.  The form says that you know that you have the right to have your plea taken by a United States District Judge, but you are agreeing to have the plea taken by a United States Magistrate Judge.

As a magistrate judge, I have the authority to take

Q7OALucP

your plea with your consent and you'll still be entitled to all the same rights and protections as if you were before a district judge.  Among other things, if your guilty plea is accepted, you will be sentenced by a district judge.

Did you sign the Consent to Proceed Before a United States Magistrate Judge voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Before you signed the form, did your lawyer explain it to you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you wish to proceed with your plea before a United States Magistrate Judge?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Your consent is accepted.

And is it correct that you wish to change your plea with respect to certain charges in the indictment?

THE DEFENDANT:  Yeah.  That's right.

THE COURT:  I want to make sure that you understand your rights to decide whether you're pleading guilty of your own free will and to make sure you are pleading guilty because you are in fact guilty and not for some other reason.  Before deciding whether your guilty plea should be accepted, I'm going to ask you certain questions under oath, and it's very important that your answers to these questions be honest and complete.

If you don't understand any of my questions, or if you wanted any time to consult with your lawyer, please say so because it is important that you understand every question before you answer.

I will now place you under oath. Please stand and raise your right hand.

(Defendant sworn)

THE COURT: You may be seated.

Do you understand that you're now under oath and that if you answer any of my questions falsely, the government may use your statements in a prosecution against you for perjury, which is the crime of making false statements.

THE DEFENDANT: Yes.

THE COURT: What is your full name.

THE DEFENDANT: Jay, J-A-Y, Scott Lucas, L-U-C-A-S.

THE COURT: And how old are you?

THE DEFENDANT: Seventy-one.

THE COURT: Are you a U.S. citizen?

THE DEFENDANT: Yes.

THE COURT: Were you a born citizen?

THE DEFENDANT: Yes.

THE COURT: Can you read and write in English?

THE DEFENDANT: Yes.

THE COURT: How far did you go in school?

THE DEFENDANT: Graduate school.

Q7OALucP

THE COURT:  And are you currently or have you recently been under the care of a psychiatrist, psychologist, or any other mental health provider for any reason?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And were you ever hospitalized for any mental illness?

THE DEFENDANT:  No.

THE COURT:  Have you ever been hospitalized for alcoholism?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And have you ever been hospitalized for drug addiction?

THE DEFENDANT:  No.

THE COURT:  Okay.  And when were you hospitalized for alcoholism?

THE DEFENDANT:  Earlier this year.

THE COURT:  And when were you released?

THE DEFENDANT:  Several months ago.

THE COURT:  Okay.  And do you have any condition that affects your ability to think or understand or to make judgments or decisions on your own behalf?

THE DEFENDANT:  No.

THE COURT:  In the past 24 hours, have you taken any drugs or had any alcohol?

THE DEFENDANT:  No.

Q7OALucP

THE COURT:  Have you taken any medicine or pills that may be affecting your mental processes today?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear right now?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what's happening in this proceeding?

THE DEFENDANT:  I do.

THE COURT:  And does either lawyer have any objections to or concerns about Mr. Lucas' competence to plead?

MR. ROBLES:  Not from the government.

MR. DE CASTRO:  No, your Honor.

THE COURT:  Okay.  Have you seen a copy of the indictment that contains the charges against you?

THE DEFENDANT:  Yes.

THE COURT:  And have you read it?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand what it says you did?

THE DEFENDANT:  Correct, yes.

THE COURT:  Have you had a full opportunity to speak with your lawyer about your case and how you wish to plead?

THE DEFENDANT:  Yes.

THE COURT:  Has your attorney explained to you the consequences of pleading guilty?

Q7OALucP

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with his representation of you?

THE DEFENDANT:  Yes.

THE COURT:  I'm going to explain certain Constitutional rights that you have.  These are rights that you will be giving up if you enter a guilty plea.  Please listen carefully to what I'm about to say, and if you don't understand something, please stop me and I will explain the issue more fully.

Under the Constitution and laws of the United States, you have the right to plead not guilty to the charges contained in this indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead not guilty, you would be entitled under the Constitution to a speedy and public trial by jury.  At that trial, you would be presumed innocent and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty.  And you could not be found guilty unless a jury of 12 people unanimously agreed that you were guilty beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you decide to go to trial, at the trial and at every stage of the case, you would have the right to be represented by a lawyer, and if you couldn't afford one, a lawyer would be appointed to represent you at the government's expense.

Even if you retained private defense counsel, if you ran out of money, an attorney would be appointed to continue to represent you.  You would be entitled to a lawyer all the way through trial and not just for a guilty plea, so your decision to plead guilty should not depend on whether you can afford to afford a lawyer.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  During the trial, the witnesses for the prosecution would have to come to court and testify in your presence where you could see them and hear them and your lawyer could cross-examine them.  And if you wanted, your lawyer could offer evidence on your behalf.  You would be able to use the Court's power to make witnesses come to court to testify in your defense even if they did not want to.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would have the right to testify in your own defense if you wanted, but you would also have the right not to testify.  And if you chose not to

testify, that could not be used against you in any way.  There could be no inference or suggestion of guilt permitted from the fact that you did not testify.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at trial, you would have the right to appeal that verdict to a higher court.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And, as I said, you have the right to plead not guilty.  Even now, you have the right to plead not guilty and go to trial.  But if you do plead guilty and if the Court accepts your plea, you will give up the rights I've described.  If you plead guilty, there will be no trial.  All that will remain to be done will be to impose a sentence.  You and the government will have a chance to make arguments about what sentence you should get.  But there will not be any further trial to determine whether you are guilty or not guilty under the charges which you plead guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Finally, if you do plead guilty you are giving up the right not to incriminate yourself because I will ask you questions about what you did to satisfy myself that you are actually guilty.

Q7OALucP

By pleading guilty, you will be admitting your factual guilt as well as your legal guilt.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  So now I'm going to review the charges against you and the consequences of pleading guilty to them.

MR. DE CASTRO:  Your Honor, can I have just one half a second?

THE COURT:  Sorry.

MR. DE CASTRO:  While you're doing that, can I have just a second with my client?

THE COURT:  Yes.

MR. DE CASTRO:  Thank you, Judge.

(Counsel confers with defendant)

Thank you, your Honor.

THE COURT:  Sure.

So Count One of the indictment charges you with securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, U.S. Code, Section 2.

Count Two charges you with investment advisor fraud in violation of Title 15, U.S. Code, Sections 80b-6 and 80b-17; and Title 17, U.S. Code, Section 2.

Count Three charges you with wire fraud in violation

Q7OALucP

of Title 18, United States Code, Sections 1343 and 2.

Count Four charges you with money laundering in violation of Title 18, U.S. Code, Section 1956 (a)(1)(B)(i) and 2.

And I'm going to ask the U.S. Attorney to state the elements of the charges.  The elements are the facts the government would have to prove beyond a reasonable doubt if you went to trial.

MR. ROBLES:  Thank you, your Honor.

With respect to Count One, securities fraud, the government would need to prove the following elements beyond a reasonable doubt:

First, that the defendant employed a device, scheme, or artifice to defraud, or made an untrue statement of material fact or omitted to state a material fact that made what was said under the circumstances misleading, or C, engaged in an act, practice, or course of business that operated as a fraud or deceit upon a purchaser or seller;

Second, that the defendant's fraud was in connection with the purchase or sale of a security;

Third, that the defendant acted knowingly, willfully, and with the intent to defraud; and

Fourth, that the defendant used or caused to be used any means or instruments of transportation or communication in interstate commerce of the mails or any facility of any

Q7OALucP

national securities exchange in furtherance of the fraudulent conduct.

With respect to Count Two, investment advisor fraud, the government would need to prove beyond a reasonable doubt:

First, that the defendant was an investment advisor;

Second, that he did one of the following things:  (a) employed a device, scheme, or artifice to defraud an actual or prospective investor advisory client; (b) he engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investment advisory clients or prospective investment advisory clients; or (c) engaged in an act, practice, and course of business that was fraudulent, deceptive, and manipulative;

Third, that the defendant devised or participated in such alleged device, scheme, or artifice to defraud, or engaged in such alleged transaction, practice, or course of business knowingly, willfully and with the intent to defraud; and

Fourth, that the defendant employed such alleged device, scheme, or artifice to defraud or engaged in such alleged transaction, practice, or course of business by the use of mails or an instrumentality of interstate commerce.

With respect to Count Three, wire fraud, the government would have to prove the following three elements beyond a reasonable doubt:

First, that the defendant executed a scheme or

Q7OALucP

artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, or promises;

Second, that he acted knowingly and with the intent to defraud; and

Third, that he did so using or causing the use of interstate wires.

Finally, with respect to Count Four, money laundering, the government would have to prove the following elements beyond a reasonable doubt:

First, that the defendant conducted or attempted to conduct a financial transaction;

Second, that he did so knowing the property involved in such a transaction represented the proceeds of some form of unlawful activity;

Third, which in fact involved the proceeds of unspecified, unlawful activity; and

Fourth, that he did so while acting with knowledge that the transaction is designed in whole or in part to disguise the nature, location, source, ownership, or control of the proceeds of the specified, unlawful activity.

Finally, the government would also have to establish venue by a preponderance of the evidence. And I'll proffer to the Court that the government would do so here in part because the registered address for the defendant's firm was based in

Q7OALucP

Manhattan where the defendant conducted business through the use of interstate wires.

THE COURT:  Thank you.

Mr. Lucas, do you understand the elements that the government just described?

THE DEFENDANT:  I do.

THE COURT:  Has your lawyer discussed them with you?

THE DEFENDANT:  Yes.

THE COURT:  So now I'll tell you the maximum possible penalty the Court may impose for these crimes.  And the maximum means the most that could possibly be imposed.  It doesn't mean that it would be the sentence you necessarily would receive or that you would be likely to receive.  However, by pleading guilty, you're exposing yourself to the possibility of receiving any combination of punishments up to the maximum that I am about to describe.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Okay.  So for Count One, securities fraud, there's a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine of the greatest of 5 million, twice the gross pecuniary gain from the offense, or twice the gross pecuniary loss to people other than you from the offense, and a $100 mandatory special assessment.

Q7OALucP

Count Two, investment advisor fraud, has a maximum term of imprisonment of five years, a maximum term of supervised release of three years, a maximum fine of the greatest of $250,000, or twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to people other than you from the offense, and a $100 mandatory special assessment.

Count Three, wire fraud, has a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine of the greatest of $250,000, twice the gross pecuniary gain from the offense, or twice the gross pecuniary loss to people other than you as a result of the offense, plus a mandatory $100 special assessment.

Count Four, money laundering, carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of three years, a maximum fine pursuant to Title 18, U.S. Code, 1956(a)(1) and 3571(b)(1) of the greatest of $500,000, or twice the value of the property involved in the transactions, or twice the value of the monetary instruments and funds involved in the transaction, transmission, or transfer, and a mandatory $100 special assessment.

The combined maximum term of imprisonment on Counts One through Four is 60 years.

Do you understand that?

THE DEFENDANT:  I do.

Q7OALucP

MR. ROBLES:  Your Honor.

THE COURT:  Okay.

MR. ROBLES:  Your Honor.

THE COURT:  Yes.

MR. ROBLES:  Your Honor, I'm sorry.  I apologize.

THE COURT:  Yes.

MR. ROBLES:  I believe the maximum term -- this is an error in the government's Pimentel letter -- is 65 years. Investment advisor fraud has a 5 year maximum, and the other three counts have 20 year maximums.  I just wanted to note for the record that I believe that's the maximum.

THE COURT:  Let me just double check that.  Thank you for pointing that out.

65 years; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And just to be clear about what supervised release means.  If you're placed on supervised release and you violate any condition of that supervised release, the district judge can revoke the term of supervised release that was previously imposed and return you to prison without giving you any credit for the time served on post-release supervision.

Do you understand that?

THE DEFENDANT:  Understood.

THE COURT:  Okay.  And in addition, there is a

Q7OALucP

forfeiture allegation in the indictment.  So that by pleading guilty, you would admit to the forfeiture allegations and agree to forfeit any money or property received from committing the offense or that was used to commit the offense.

I am also required by law to advise you, even though you told me that you're a citizen of the United States and were born here, if in fact you're not a U.S. citizen, a guilty plea would mean that it is quite likely you would be removed from the United States or denied admission to the United States or denied citizenship in the future, no matter what your lawyer or anyone else has told you about the immigration consequences of pleading guilty.

Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  Okay.  And if you were a naturalized rather than a born citizen, you could lose your citizenship if you made false statements or admitted information in obtaining naturalization.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And if those immigration consequences were to take place, you would still be bound by your guilty plea so that you would not be able to withdraw it regardless of any advice you received from your lawyer or anyone else about immigration consequences of pleading.

Q7OALucP

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand the charges against you and the consequences of pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  So the prosecutor has written a letter, it's dated July 15th, 2026, where the prosecutor sets forth the government's position as to how a part of our law known as the sentencing guidelines would apply to your case. And the letter says that the government believes that the guidelines will provide for a prison sentence of between 151 and 188 months of imprisonment and a range of applicable fines of between 35,000 and $5 million.

Have you discussed the letter with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what it says?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that it's not a binding agreement?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that the sentencing judge is not bound by the calculation in the letter and must do her own calculation, which may result in a guideline range different from the one in the letter?

THE DEFENDANT:  Yes.

Q7OALucP

THE COURT:  Do you understand that the range is just one of many factors that the judge will consider in determining your sentence and that you may be sentenced to below or above the range anywhere up to the maximum that I told you about earlier?

THE DEFENDANT:  Yes.

THE COURT:  Of 65 years.

THE DEFENDANT:  Yes.

THE COURT:  Are there any other provisions of the letter that the government or defense counsel would like me to review?

MR. ROBLES:  No, your Honor.  I'll just note again for the record that there's an inadvertent error in the government's letter in terms of the maximum total sentence that could apply, but I think the Court correctly noted it's 65 years as opposed to 60.

THE COURT:  Thank you.

MR. DE CASTRO:  Nothing to add, Judge.

THE COURT:  Okay.  Putting aside the letter, has any promise been made to you to influence you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened or forced or coerced you in any way, either directly or indirectly, to get you to plead guilty?

THE DEFENDANT:  No.

Q7OALucP

THE COURT:  Okay.  Now, that you have been advised of the charges against you and the possible penalties you face and the rights you're giving up, is it still your intention to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And, first, you will need to withdraw your prior plea of not guilty.

Do you wish to withdraw your prior plea of not guilty to Counts One through Four of the indictment?

THE DEFENDANT:  Yes.  Yes.

THE COURT:  Okay.  And now I'm going to ask you to plead guilty.  I just want to confirm again that your decision to do so is voluntary and of your own free will.

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Mr. Lucas, with respect to Count One, how do you plead?

THE DEFENDANT:  Guilty, your Honor.

THE COURT:  With respect to Count Two, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  With respect to Count Three, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  With respect to Count Four, how do you plead?

Q7OALucP

THE DEFENDANT:  Guilty.

THE COURT:  And are you pleading guilty because you committed the crimes to which you're pleading guilty and you are in fact guilty?

THE DEFENDANT:  Yes.

THE COURT:  Please tell me in your own words what makes you guilty of the crimes charged in the indictment.

THE DEFENDANT:  Sure.  I have a statement to read, your Honor.

THE COURT:  That's fine.

THE DEFENDANT:  From 2013, to 2025, I primarily ran three private equity funds, Lucas Brand Equity LP, LB Equity Emerging Growth, and LB Equity Wellness Growth.

The funds and I operated as investment advisors.  The goal of the private funds was to solicit and pool money from sophisticated investors to invest in small and emerging companies in the wellness, beauty, and personal care industries.

The private equity funds would invest monies and seek to restructure and provide expertise to these companies to improve their brands in hopes that these companies would be acquired by large public companies at a significant profit.

From 2017 to 2020, the funds had an office in Manhattan.  After 2020, I also had a residence in Manhattan and conducted business out of my residence in Manhattan.  I

solicited investor funds in Manhattan and had bank accounts here that received investor funds.  I used the phone and internet to communicate with investors and received wire transfers of investor funds.

We charged an annual management fee of 1.5 percent.  I solicited funds from investors and the funds made investments in what we identified as small, promising, and emerging brands in the wellness, beauty, and personal care industries. Investors understood that a substantial portion of their investments would be used to make investments in wellness, beauty, and personal care companies.

From 2017 to 2025, I made misrepresentations in the -- misrepresentations and omissions to investors.  For example, the financial statements of the Fund 1 required that they be audited by certified accountants.  We did not retain an outside accounting firm or have the financial audits.

For Fund 2, I made misrepresentations around 2023 or 2024 that we would be using a third-party administrator for reporting and compliance.  While we did retain a firm to do so, our relationship lapsed in 2018, 2019.

The three funds did not have enough successful elements to generate returns or distributions that would have permitted us to cover our previous expenses, and the management fee was insufficient to cover these expenses.  The funds were struggling with liquidity.  Over the years, I took millions of

dollars of investor money to pay operating expenses, which included my own salary.

We recorded these uses as "net due from affiliates" and reported these amounts in our successive quarterly financial reports without further clarification.

Sometimes I had personal expenses paid directly from the fund, recorded separately and internally netted out to my personal account.  Other times, I transferred funds to a separate business account that I controlled where I paid personal expenses and internally recorded these transfers as part of "net due from affiliates."

Other times, I transferred funds to an entity in which we were invested but that I controlled, and then transferred money to my account where I used that money to pay expenses, and sometimes a portion was sent back to the funds.  Transfers this way obfuscated the source of the funds.

I knew at the time it was wrong and a huge mistake and a crime.  I deeply regret my conduct and I'm sorry for what I have done.

THE COURT:  Thank you, Mr. Lucas.

And you knew at the time you did these acts that what you were doing was against the law?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.

Counsel, are there any additional questions you would

Q7OALucP

like me to ask?

MR. ROBLES:  No, your Honor.  Thank you.

THE COURT:  And, counsel?

MR. DE CASTRO:  No additional -- I'm sorry.  No additional questions, your Honor.

THE COURT:  Okay.  And, Mr. Robles, do you believe that there is a sufficient factual predicate for the guilty plea?

MR. ROBLES:  I do, your Honor.

THE COURT:  Does the government represent that it has sufficient evidence to prove guilt beyond a reasonable doubt at trial?

MR. ROBLES:  Yes, your Honor.

THE COURT:  Would you like to make a proffer?

MR. ROBLES:  Yes, your Honor.

If the case were to proceed to trial, the government's evidence would include, among other things, testimony of witnesses, communications including text messages and e-mails between the defendant and others evidencing the fraud, bank records showing payments that were being made in and out of the funds to cover personal expenses for the defendant and being transferred in a manner intended to obfuscate how the funds were being used, e-mails from the defendant soliciting investments from potential investors that included misrepresentations, offering documents that were also provided

to investors that included misrepresentations about how the funds would ultimately be used, and a form ADV form filed with the SEC confirming that the defendant and his firms were investment advisors.

THE COURT:  Thank you.

And I take it there's no dispute as to venue?  You already indicated...

MR. ROBLES:  That's right, your Honor.

MR. DE CASTRO:  That's correct.

THE COURT:  Mr. De Castro, do you believe that there is a sufficient factual predicate for a guilty plea?

MR. DE CASTRO:  Yes, your Honor.

THE COURT:  And do you dispute venue?

MR. DE CASTRO:  No.

THE COURT:  So, Mr. Lucas, on the basis of your responses to my questions and my observations of your demeanor, I find you're competent to enter an informed guilty plea and there's a factual basis for it.  I am satisfied that you understand your rights, that you are aware of the consequences of your plea, including the sentence that may be imposed, that you are voluntarily pleading guilty, and that you've admitted that you are in fact guilty as charged in Counts One to Four of the indictment.  For these reasons, I recommend that the district judge should accept your plea.

I'm going to ask the government to order a copy of the

Q7OALucP

transcript to be sent to Judge Rochon together with any additional paperwork so that she may act on my recommendation.

Has Judge Rochon set a sentencing date?

MR. ROBLES:  There's been discussion about a potential date, but one has not been set.  I anticipate the parties will formally ask for one when the plea has been accepted by the district court.

THE COURT:  Okay.  Well, then for now, I will put a control date of Monday, August 24th, 2026.

MR. DE CASTRO:  Judge, I think -- I don't know if it didn't hit the docket of course.  The deputy I think informed us that November 12th at 10:30.

THE COURT:  Wonderful.  November 12th at 10:30.  Then I withdraw the --

MR. DE CASTRO:  I don't think you need to set a control date.

THE COURT:  Yes.  And I'll direct a presentence report to be prepared by probation.

Will you be able to deliver the case summary to probation within 14 days?

MR. ROBLES:  Yes, your Honor.

THE COURT:  And will you be able to be interviewed by probation with your client within 14 days?

MR. DE CASTRO:  Yes, Judge.  At least schedule it, yes.

Q7OALucP

THE COURT:  Okay.  Thank you.

And are there any objections to continuing the present terms of release?

MR. ROBLES:  No, your Honor.

THE COURT:  Okay.  Then, Mr. Lucas, all of the conditions on which you were released up to now continue to apply, and a violation of those conditions can have serious consequences, including the revocation of bail and prosecution for bail jumping.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  Is there anything further from either side?

MR. ROBLES:  No, your Honor.

MR. DE CASTRO:  No, your Honor.  Thank you.

THE COURT:  Thank you very much.  And good luck, Mr. Lucas.

THE DEFENDANT:  Thank you.

(Adjourned)

# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 15, 2026

**By Email**

César de Castro, Esq.
The Law Firm of César de Castro, P.C.
111 Fulton Street - 602
New York, New York 10038
cdecastro@cdecastrolaw.com

    Re:    <u>**United States v. Jay Lucas**</u>, 25 Cr. 581 (JLR)

Dear Mr. de Castro:

    This document is not a plea agreement. Rather, pursuant to the suggestion of the Court in *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991), this letter sets forth the current position of the United States Attorney's Office for the Southern District of New York (the "Office") regarding the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to defendant Jay Lucas (the "defendant") in this case.

    Count One of the Indictment charges the defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2. Count One carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 15, United States Code, Section 78ff and Title 18, United States Code, Section 3571 of the greatest of $5 million, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

    Count Two of the Indictment charges the defendant with investment adviser fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17; and Title 18, United States Code, Section 2. Count Two carries a maximum term of imprisonment of 5 years; a maximum term of supervised release of 3 years; a maximum fine, pursuant to 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

    Count Three of the Indictment charges the defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2. Count Three carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, of the greatest of $250,000, twice the gross

2026.06.10

pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory $100 special assessment.

Count Four charges the defendant with money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2. Count Four carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Sections 1956(a)(1), and 3571(b)(1), of the greatest of $500,000, twice the value of the property involved in the transactions, or twice the value of the monetary instruments and funds involved in the transportation, transmission, or transfer; and a mandatory $100 special assessment.

The combined maximum term of imprisonment on Counts One through Four is 60 years.

The Government currently believes that the Guidelines apply to the crime charged in the Indictment as follows:

A. <u>Offense Level</u>

1. The applicable Guidelines Manual is the November 1, 2025 manual.

2. Pursuant to U.S.S.G. §§ 3D1.2(b)-(d), Counts One through Four are grouped together into a single group because (i) Counts One through Four involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan; (ii) Counts One through Three embody conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable to Count Four; and (iii) the offense level for Counts One through Four is determined largely on the basis of the total amount of harm or loss.

3. Pursuant to U.S.S.G. § 2B1.1(a)(1), which is the applicable Guideline for Counts One through Three, the base offense level is seven.[1]

4. Pursuant to U.S.S.G. § 2B1.1(b)(1)(L), twenty-two levels are added because the loss was more than $25,000,000 but less than $65,000,000.

5. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), two levels are added because the offense involved ten or more victims.

6. Pursuant to U.S.S.G. § 2B1.1(b)(20)(A)(iii), four levels are added because the offense involved a violation of securities law and, at the time of the offense, the defendant was an investment adviser, or a person associated with an investment adviser.

---

[1] The applicable Guideline for Count Four, U.S.S.G. § 2S1.1, states that the applicable base offense level for the offense in Count Four is the offense level for the underlying offense, here the offenses in Counts One through Three.

2026.06.10

7. Pursuant to U.S.S.G. § 3B1.1(c), two levels are added because the defendant was an organizer, leader, manager, or supervisor in criminal activity.

8. No adjustment is appropriate pursuant to U.S.S.G. § 4C1.1 because the defendant received an aggravating role adjustment under §3B1.1. See U.S.S.G. §§ 4C1.1(a)(10).

9. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 34.

B. <u>Criminal History Category</u>

Based upon this Office's current understanding (including from representations by the defense), the defendant has zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

C. <u>Sentencing Range</u>

Based upon the calculations set forth above, the defendant's sentencing range is 151 to 188 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 34, the applicable fine range is $35,000 to $5,000,000.

The foregoing Guidelines calculation is based on facts and information currently known to the Office. Nothing in this letter limits the right of this Office (1) to change its position at any time as to the appropriate Guidelines calculation in this case, including its position as to the defendant's eligibility for safety valve relief under 18 U.S.C. § 3553(f), even if that change is based, in whole or in part, on information that was in the Government's possession as of the date of this letter; and/or (2) to present to the Court or the United States Probation Office, either orally or in writing, any and all facts and arguments relevant to sentencing that are available to the Office at the time of sentencing. Nor does anything in this letter limit the right of this Office to seek a variance from the Guidelines, or to take a position on any variance that may be suggested by the Court, the United States Probation Office, or the defendant.

This letter does not and cannot bind either the Court or the United States Probation Office, either as to questions of fact or as to determinations of the correct application of the Guidelines in

2026.06.10

this case. Instead, the sentence to be imposed upon the defendant will be determined solely by the Court. This Office cannot and does not make any promise or representation as to what sentence the defendant will receive.

The defendant is hereby notified that, if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. The defendant is further notified that, if the defendant is a naturalized citizen of the United States, the defendant's guilty plea may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if the defendant's naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant is further notified that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. The defendant is entitled to and should seek advice from the defendant's attorney on this issue.

Very truly yours,

JAY CLAYTON
United States Attorney

By: _____
David J. Robles
Assistant United States Attorney
(212) 637-2550

2026.06.10

# **EXHIBIT C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JAY LUCAS,

Defendant.

**ORDER**

25 Cr. 581 (JLR)

WHEREAS, with the consent of defendant Jay Lucas, the defendant's guilty plea allocution was taken before United States Magistrate Judge Robyn F. Tarnofsky on July 24, 2026;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to this Court;

WHEREAS, upon review of that transcript and the associated *Pimentel* letter, this Court has determined that the defendant entered the guilty plea knowingly and voluntarily, that there was a factual basis for the guilty plea, and that the requirements of Fed. R. Crim. P. 11 were satisfied;

IT IS HEREBY ORDERED that the defendant's guilty plea is accepted. Sentencing is scheduled for: _____.

**SO ORDERED.**

Dated:      New York, New York
            July 24, 2026

_____
HONORABLE JENNIFER L. ROCHON
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK